[761 NYS2d 192]

THE PEOPLE OF THE STATE OF NEW YORK, by ELIOT SPITZER, as Attorney General of the State of New York, Appellant, v STURM, RUGER & COMPANY, INC., et al., Respondents.

First Department, June 24, 2003

## APPEARANCES OF COUNSEL

*Eliot Spitzer* of counsel *(Caitlin J. Halligan, Beth L. Golden, Peter B. Pope, Hillary Weisman* and *Sachin S. Pandya* on the brief; *Eliot Spitzer, Attorney General*, attorney), for appellants.

*Lawrence S. Greenwald* of counsel (*Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC*, attorneys), for Beretta U.S.A. Corp., respondent.

*David R. Gross* of counsel (*Budd Larner Gross Rosenbaum Greenberg & Sade,* attorneys), for RSR Wholesale Guns, Inc. doing business as RSR Group, New York, Inc., and others, respondents.

*William E. Vita* and *James P. Door* on the brief; *Gallagher, Gosseen, Faller & Crowley* and *Wildman, Harrold, Allen & Dixon*, attorneys, for Sturm, Ruger & Company, Inc., respondent.

*Thomas E. Healy* and *Thomas E. Fennell* on the brief; *Pino & Associates, LLP* and *Jones, Day, Reavis & Pogue*, for Colt's Manufacturing Co., Inc., respondent.

*Brian Heermance* and *Michael C. Hewitt* on the brief; *Morrison, Mahoney & Miller* and *Bruinsma & Hewitt*, for Bryco Arms, respondent.

*Timothy A. Bumann* on the brief; *Budd Larner Gross Rosenbaum Greenberg & Sade*, for Taurus International Manufacturing, Inc., respondent.

*John F. Renzulli* on the brief; *Renzulli & Rutherford, LLP*, for Glock Inc. and another, respondents.

*Michael Branisa* and *Michael Zomcik* on the brief; *Tarics & Carrington, P.C.*, for Phoenix Arms, respondent.

*Eric Proshansky* of counsel (*Gail Rubin* on the brief; *Michael A. Cardozo, Corporation Counsel* of New York City, attorney), for City of New York, amicus curiae.

### OPINION OF THE COURT

MARLOW, J.

Plaintiff State of New York, by its Attorney General, commenced this action with a complaint alleging that defendant corporations, which are handgun manufacturers, wholesalers and retailers, have created, contributed to, and maintained a public nuisance by their respective manufacturing, distributing and marketing practices. Plaintiff now appeals from an order of the Supreme Court which consolidated and granted defendants' motions to dismiss the complaint for failure to state a cause of action. While originally pleading both a statutory (Penal Law § 400.05 [1]) and a common-law public nuisance cause of action, plaintiff, on this appeal, does not challenge the motion court's dismissal of the former. Thus, the only remain-

ing issue is whether the motion court correctly dismissed, pursuant to CPLR 3211 (a) (7), the cause of action for common-law public nuisance.

Plaintiff's complaint, as pertinent here, claims that illegally possessed handguns are a common-law public nuisance because they endanger the health and safety of a significant portion of the population; interfere with, offend, injure and otherwise cause damage to the public in the exercise of rights common to all; and that, after being placed on actual and constructive notice that guns defendants sell, distribute and market are being used in crimes, they have, by their conduct and omissions, created, maintained and contributed to this public nuisance, because they manufacture, distribute and market handguns allegedly in a manner that knowingly places a disproportionate number of handguns in the possession of people who use them unlawfully. Plaintiff further claims that defendants are on notice that certain types of guns, and guns sold in certain locales, are disproportionately used in the commission of crimes. They base that claim on the results of trace requests which the Bureau of Alcohol, Tobacco and Firearms (BATF) initiates with respect to guns used in or associated with crimes, in furtherance of its duty to enforce and manage the federal firearm regulatory scheme.

Plaintiff therefore seeks an order, inter alia, "(1) directing defendants to abate the nuisance they have created and maintain within the State of New York; [and] (2) directing each defendant to cease contributing to and maintaining the nuisance within the State of New York."

The motion court dismissed plaintiff's complaint on the ground that it fails to state a cause of action for common-law public nuisance. The court so found because defendants are engaged in the lawful manufacture, marketing and sale of a defect-free product in a highly regulated activity far removed from the downstream, unlawful use of handguns that is out of their control and constitutes the nuisance alleged. The court ruled that, in order to survive a dismissal motion, plaintiff was required to allege more specific facts to show how defendants are linked to, and how they contributed to that nuisance, because BATF trace request information presently available to defendants is insufficient to support a common-law public nuisance lawsuit.

We agree and affirm, based on the reasoning and implications of *Hamilton v Beretta U.S.A. Corp.* (96 NY2d 222 [2001]) and the fact that the legislative and executive branches are

better suited to address the societal problems concerning the already heavily regulated commercial activity at issue.

The New York Court of Appeals has never recognized a common-law public nuisance cause of action based on allegations like those in this complaint. Moreover, other jurisdictions have dismissed public nuisance claims against firearms manufacturers on similar or other grounds (*see City of Philadelphia v Beretta U.S.A. Corp.*, 277 F3d 415 [3d Cir 2002] [civic organizations lacked standing to sue gun manufacturers on claim that gun industry's methods for distributing guns were negligent and a public nuisance since there was no causal nexus between manufacturers' conduct and alleged injuries of civic organizations' members and because action could not proceed in absence of participation of members of organizations who actually sustained damage]; *Camden County Bd. of Chosen Freeholders v Beretta, U.S.A. Corp.*, 273 F3d 536 [3d Cir 2001] [causal chain too attenuated to make out public nuisance claim associated with criminal use of handguns]; *Ileto v Glock, Inc.*, 194 F Supp 2d 1040 [CD Cal 2002] [applying California state law, federal court concluded that manufacture and sale of nondefective product cannot give rise to public nuisance claim]; *District of Columbia v Beretta U.S.A. Corp.*, 2002 WL 31811717 [DC Super Ct, Dec. 16, 2002] [action for public nuisance not sustainable as a matter of law because it is not based upon conduct of defendants that violates any criminal law or any municipal regulation or health and safety law of the District of Columbia]; *City of Gary ex rel. King v Smith & Wesson Corp.*, 2001 WL 333111 [Ind Super Ct, Jan. 11, 2001] [conduct cannot constitute public nuisance under Indiana law unless it is actionable under some theory of tort law]; *Penelas v Arms Tech., Inc.*, 778 So 2d 1042 [Fla Ct App, 3d Dist 2001] [Florida statute expressly preempts entire field of firearm and ammunition regulation]; *Ganim v Smith & Wesson Corp.*, 258 Conn 313, 780 A2d 98 [2001] [plaintiffs' public nuisance claim dismissed because harms alleged too indirect and remote from defendants' conduct]).[1]

---

**1.** *But see National Assn. for Advancement of Colored People v Acusport Corp.*, 210 FRD 446 (ED NY 2002) (where complaint against manufacturers and distributors of firearms alleged improper sale and distribution of guns resulting in thousands of deaths a year, plaintiff stated a public nuisance claim under New York law); *City of Chicago v Beretta U.S.A. Corp.*, 337 Ill App 3d 1, 785 NE2d 16 (App Ct, 1st Dist 2002), *lv allowed* 203 Ill 2d 544, 788 NE2d 727 (2003) (public nuisance cause of action stated where complaint alleged that defendants' collective marketing practices unreasonably

In its most recent opinion on the accountability of gun manufacturers and dealers, the New York Court of Appeals in *Hamilton* said nothing to suggest that it is moving in the direction of sustaining other types of tort claims in this area of commercial activity. Notwithstanding the arguments advanced by plaintiff, our reading of *Hamilton* suggests the Court's resolve to maintain its present and longstanding posture of denying liability where the causal connection between the alleged business conduct and harm is too tenuous and remote. *Hamilton,* just as here, deals with defendants' manufacturing, distribution, marketing and sales practices, but, unlike here, does so in the context of a lawsuit by private plaintiffs against defendants based on a claim, inter alia, of negligent marketing, a tort different from the instant common-law public nuisance claim. However, much of the Court's reasoning in dismissing the *Hamilton* negligent marketing complaint logically, and most aptly, applies to our consideration of this plaintiff's common-law public nuisance claim.

To begin with, the Court reasoned that, generally, defendant gun manufacturers do not owe a "duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control." (*Hamilton*, 96 NY2d at 233, quoting *D'Amico v Christie*, 71 NY2d 76, 88 [1987].) Indeed, the *Hamilton* Court, unanimously and specifically, rejected the plaintiffs' contention that gun manufacturers have a general duty of care born of their purported ability to lessen the risks of illegal gun trafficking because they have the power to restrict marketing and product distribution.

The root of the *Hamilton* Court's reasoning, in a significant measure, appears to be as follows (96 NY2d at 233): "This judicial resistance to the expansion of duty grows out of practi-

facilitated unlawful possession and use of firearms); *Young v Bryco Arms*, 327 Ill App 3d 948, 765 NE2d 1 (App Ct, 1st Dist 2001), *lv allowed* 201 Ill 2d 619, 786 NE2d 202 (2002) (public nuisance law could be applied to manufacturers and distributors of handguns used by teenage gang members to kill victims though handguns themselves were nondefective, legal products, where victims' survivors alleged that manufacturers and distributors had intentionally created and maintained an illegal secondary gun market by oversupplying the areas around city with handguns); *City of Boston v Smith & Wesson Corp.*, 12 Mass L Rptr 225, 2000 WL 1473568, 2000 Mass Super LEXIS 352 (Super Ct, July 13, 2000) (motion to dismiss denied where complaint alleged defendants intentionally and negligently created and maintained an illegal, secondary firearms market which unreasonably interfered with public rights).

cal concerns both about potentially limitless liability and about the unfairness of imposing liability for the acts of another."

Although the tort of common-law public nuisance is defined differently from negligent marketing, this quoted concern expressed in *Hamilton* is, as we see it, common to both negligent marketing and public nuisance claims. Although this public nuisance lawsuit is brought by the Attorney General on behalf of the State of New York—while the *Hamilton* action was one initiated by private parties for negligent marketing—both were brought against handgun manufacturers and sellers. Plaintiff's attempt here to widen the range of common-law public nuisance claims in order to reach the legal handgun industry will not itself, if successful, engender a limitless number of public nuisance lawsuits by individuals against these particular defendants, as was a stated concern in *Hamilton* (96 NY2d at 233). However, giving a green light to a common-law public nuisance cause of action today will, in our judgment, likely open the courthouse doors to a flood of limitless, similar theories of public nuisance, not only against these defendants, but also against a wide and varied array of other commercial and manufacturing enterprises and activities.

All a creative mind would need to do is construct a scenario describing a known or perceived harm of a sort that can somehow be said to relate back to the way a company or an industry makes, markets and/or sells its nondefective, lawful product or service, and a public nuisance claim would be conceived and a lawsuit born. A variety of such lawsuits would leave the starting gate to be welcomed into the legal arena to run their cumbersome course, their vast cost and tenuous reasoning notwithstanding. Indeed, such lawsuits employed to address a host of societal problems would be invited into the courthouse whether the problems they target are real or perceived; whether the problems are in some way caused by, or perhaps merely preceded by, the defendants' completely lawful business practices; regardless of the remoteness of their actual cause or of their foreseeability; and regardless of the existence, remoteness, nature and extent of any intervening causes between defendants' lawful commercial conduct and the alleged harm.

As one court put it in a case involving similar issues under New Jersey law (*Camden County Bd. of Chosen Freeholders v Beretta, U.S.A. Corp.*, 273 F3d 536, 540 [2001]):

> "Whatever the precise scope of public nuisance law
> in New Jersey may be, no New Jersey court has

ever allowed a public nuisance claim to proceed against manufacturers for lawful products that are lawfully placed in the stream of commerce. On the contrary, the courts have enforced the boundary between the well-developed body of product liability law and public nuisance law. Otherwise, if public nuisance law were permitted to encompass product liability, nuisance law 'would become a monster that would devour in one gulp the entire law of tort.' *Tioga Public Sch. Dist. v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993). If defective products are not a public nuisance as a matter of law, then the non-defective, lawful products at issue in this case [handguns] cannot be a nuisance without straining the law to absurdity."

We are not saying—just as the Court of Appeals has not said—that a common-law public nuisance claim is always an inappropriate legal tool to address consequential harm from all forms of commercial activity. Indeed, New York courts have permitted such lawsuits in the past (*see New York Trap Rock Corp. v Town of Clarkstown*, 299 NY 77, 80-81 [1949]). Although plaintiff relies on *New York Trap Rock* in this context, that reliance is misplaced. In that case a public nuisance counterclaim against New York Trap Rock survived a motion to dismiss. However, plaintiff's legal position here is critically different, because of the nature of the targeted activity of the Trap Rock Corporation. Trap Rock's activity was blasting which, wholly unlike the business practices alleged here, was the *direct and immediate cause* of the damage to others nearby. In *New York Trap Rock* there was no subsequent, intervening criminal or other act or event, initiated by any third party, beyond Trap Rock's control, that can be said to have caused or contributed to the damage beyond the blasting itself—damage which was spatially and temporally proximate to the Trap Rock blasting site and activity.

Plaintiff's reliance on *City of Rochester v Premises Located at 10-12 S. Washington St.* (180 Misc 2d 17 [1998]) is similarly misplaced because even though the court there held defendants liable for conduct of their patrons both in and outside of defendant's nightclub, the patrons' off-premises conduct occurred in spatial proximity to defendant's premises and in temporal proximity to its commercial activity, and the conduct was very much related to the commercial entity's business activity (*see also Packett v Herbert*, 237 Va 422, 425-426, 377

SE2d 438, 441-442 [1989]; *Gelletly v Commonwealth*, 16 Va App 457, 459-460, 430 SE2d 722, 724 [1993]). Moreover, the conduct itself in some respects violated the Penal Law in that it was disorderly, consisting also of assaults, fighting and shootings. Furthermore, the character of the premises as a nightclub serving alcoholic beverages, when viewed in light of the other facts, extinguishes any doubt that the cited obnoxious, illegal and offensive behavior caused the harm alleged, was its immediate and direct cause, and was, at least in part, inextricably intertwined with defendant's commercial activity, i.e., the sale of alcoholic beverages for immediate consumption (*see also Sunset Amusement Co. v Board of Police Commrs.*, 7 Cal 3d 64, 84, 496 P2d 840, 853 [1972], *appeal dismissed* 409 US 1121 [1973] [in denying renewal permit application, court rejected defendant's claim that its roller skating rink should not be held responsible for serious traffic congestion, numerous and varied traffic offenses, thefts and misuse of private property committed by its patrons off the premises]).[2]

---

**2.** Other cases where public nuisance claims have been allowed to proceed involve specific harm directly attributable to defendant or defendant's activity (*see e.g. Clawson v Central Hudson Gas & Elec. Corp.*, 298 NY 291 [1948] [new trial on public nuisance claim where evidence showed defendant electric company maintained dam in such a way that spray formed ice upon bridge and approaches which created dangerous condition for users of public highway of which bridge was a part]; *Hoover v Durkee*, 212 AD2d 839 [1995] [evidence supported finding that racetrack was a public nuisance—noise generated by track drowned out all other sounds, prevented conversation at home or on the phone, even with windows closed, there was an increase in traffic, and public address system could be heard from a significant distance]; *People v HST Meth*, 43 AD2d 932 [1974] [evidence, which included results of police investigation, which uncovered illegal drug trafficking on premises, in some cases involving clinic employees, sufficient to sustain finding that defendant's methadone clinic constituted a public nuisance]; *State of New York v Ole Olsen, Ltd.*, 38 AD2d 967 [1972] [sale of properties with nuisance consisting of improper and inadequate sewage disposal systems did not absolve vendor's liability for creation of public nuisance even though control had passed to purchasers]; *State of New York v Fermenta ASC Corp.*, 160 Misc 2d 187 [1994], *appeal dismissed* 238 AD2d 400 [1997], *lv denied* 90 NY2d 810 [1997] [substantial unresolved questions of fact in public nuisance case where plaintiffs claimed that highly soluble byproduct of defendant's herbicide contaminated groundwater]; *State of New York v Schenectady Chems.*, 117 Misc 2d 960 [1983], *affd as mod* 103 AD2d 33 [1984] [court allowed public nuisance action to proceed against chemical manufacturer who had contracted with a third party to dispose of chemical water, even though resulting groundwater contamination occurred over 30-year period]; *State of New York v Waterloo Stock Car Raceway*, 96 Misc 2d 350, 357 [1978] [where everyone had their eardrums "hammered away" during night stock car races, expected aftermath of dust accumulation on their property, and lived in fear

In asking this Court to allow the pursuit of a common-law public nuisance cause of action, plaintiff would have us summarily ignore:

(1) the fact that the Court of Appeals, in *Hamilton* (96 NY2d at 238-239, 239 n 8), found a lack of sufficiently specific information provided by BATF trace requests, and noted the practical problem of asking defendants themselves to further investigate the trace request information;

(2) the importance and fairness of considering such concepts as remoteness, duty, proximate cause and the significance of the indisputable intervention of unlawful and frequently violent acts of criminals—over whom defendants have absolutely no control—who actually, directly, and most often intentionally, cause the cited harm;

(3) the significance and unfairness of holding defendants accountable even though their commercial activity is wholly lawful and currently heavily regulated, and that their products are nondefective; and

(4) the plain fact that courts are the least suited, least equipped, and thus the least appropriate branch of government to regulate and micromanage the manufacturing, marketing, distribution and sale of handguns.

*The Qualitative Inadequacy of BATF Trace Requests to Achieve this Lawsuit's Goal.*

Central to plaintiff's claim is an assertion that defendants are on actual and constructive notice through trace requests by

---

for their continued safety, operation of racetrack constituted a public nuisance that should be discontinued]; *County of Sullivan v Filippo*, 64 Misc 2d 533 [1970] [evidence established that if programs, including rock festivals, planned for a certain date, which included proposed ticket sales of 50,000 and over 18 hours of performing, were permitted to go on, use of highways, medical facilities and other facilities would have imposed unreasonable and excessive burden on people of county and constituted threatened public nuisance]; *Town of Preble v Song Mtn.*, 62 Misc 2d 353 [1970] [court enjoined proposed rock festival which was to be held at ski resort and expected to draw 30,000 and which would interfere substantially with the rights of general public in the vicinity]; *City of Rochester v Charlotte Docks Co.*, 114 NYS2d 37 [1952] [noise emitted by coal transshippers' shake-out unloading operation in evening and nights unreasonably interfered with and was detrimental to the comfort, repose and health of nearby residents and constituted a public nuisance]; *City & County of Honolulu v Cavness*, 45 Haw 232, 364 P2d 646 [1961] [building which was situated in congested area adjacent to public street of city and which was found to be in great danger of collapse by reason of its deteriorated state was a public nuisance both at common law and under city and county building code]).

BATF that they are deliberately choosing to manufacture handguns that are attractive to criminals. Plaintiff further alleges that defendants knowingly manufacture, distribute and sell an endless supply of guns that disproportionately wind up in criminal hands in New York. Plaintiff claims that defendants, knowing where and how to market and make handguns in a way that meets the demand of an illegal gun market, do so by their design, marketing and distribution choices.

Therefore, it is the trace requests defendants receive from the BATF and the information allegedly flowing from them which form the foundation of plaintiff's allegation that defendants' knowing business practices give rise to a legally cognizable claim of public nuisance. Plaintiff thus argues that its complaint sufficiently alleges a cause of action for public nuisance because it states that defendants' conduct knowingly results in an increase in the number of guns in criminal hands and that defendants have the power to abate that consequence by adjusting their business practices.

However, the *Hamilton* Court rejected notions similar to the one this plaintiff advances, namely, that through trace requests which defendants receive from the BATF, they are given information about guns they design, make and market sufficient to know where and how to adjust their business practices so as to reduce the number of guns attractive to criminals, and to limit their sales in ways which would allegedly lessen their distribution into areas where disproportionate numbers of crime guns are seized. Thus, the *Hamilton* Court said (96 NY2d at 238-239):

> "Plaintiffs' experts explained that a crime gun trace is the means by which the BATF reconstructs the distribution history of a gun used in a crime or recovered by the police. While [handgun] manufacturers may be generally aware of traces for which they are contacted, they are not told the purpose of the trace, nor are they informed of the results. The BATF does not disclose any subsequently acquired retailer or purchaser information to the manufacturer. Moreover, manufacturers are not in a position to acquire such information on their own. Indeed, plaintiffs' law enforcement experts agreed that manufacturers should not make any attempt to investigate illegal gun trafficking on their own since such attempts could disrupt pending criminal investigations and endanger the lives of undercover officers."

Indeed, the Court in *Hamilton* (96 NY2d at 237 n 5) referred to the gaps in information provided by trace requests, and it suggested that, "[b]ecause of BATF's continued pursuit in identifying how handguns enter the illegal market, it may well be that a core group of corrupt FFLs [federal firearms licensees] will emerge at some future time. This might alter the duty equation."

Therefore, we see it as inappropriate at this juncture to sustain this complaint. There is no reason to believe that the level of knowledge flowing from the instant trace requests today is any greater than it was when *Hamilton* was decided. This is especially so because the duty which this plaintiff's complaint ultimately seeks to impose is similar to the one the *Hamilton* Court unanimously rejected.

Furthermore, we find relevant the *Hamilton* Court's observation that there is no evidence of a statistically significant relationship between "particular classes" of dealers and crime guns. The Court thus concluded (*id.* at 236):

> "To impose a general duty of care upon the makers of firearms under these circumstances because of their purported ability to control marketing and distribution of their products would conflict with the principle that any judicial recognition of a duty of care must be based upon an assessment of its efficacy in promoting a social benefit as against its costs and burdens (*see, Waters v New York City Hous. Auth.*, 69 NY2d 225, *supra*). Here, imposing such a general duty of care would create not only an indeterminate class of plaintiffs but also an indeterminate class of defendants whose liability might have little relationship to the benefits of controlling illegal guns (*see Waters*, 69 NY2d, at 230)."

*Duty, Remoteness, Proximate Cause and the Intervening Acts of Third Parties.*

Plaintiff argues, in part, that a common-law public nuisance cause of action merely requires plaintiff to allege the existence of circumstances that appear as a public nuisance, and to assert acts of a defendant that create, contribute to, or maintain that nuisance. The Court of Appeals' definition goes further, however, and includes the concept of conduct or omissions that "offend, interfere with or cause damage to the public in the exercise of rights common to all * * * in a manner such as to offend public morals, interfere with use by the public of a pub-

lic place or endanger or injure the property, health, safety or comfort of a considerable number of persons" (*Copart Indus. v Consolidated Edison Co.*, 41 NY2d 564, 568 [1977]). The question thus is whether the concept of duty, so relevant to other causes of action, plays any part in an examination of the validity of this common-law public nuisance lawsuit.

Plaintiff cites no New York decision which imposes an undefined duty of care on handgun manufacturers and distributors, with respect to the design, manufacture, marketing or selling of their product, other than the obligation to follow relevant statutes and regulations. In fact, we have held in a products liability case against, inter alia, members of the handgun industry, that "New York does not impose a duty upon a manufacturer to refrain from the lawful distribution of a non-defective product (*see, Elsroth v Johnson & Johnson*, 700 F Supp 151, 156)" (*Forni v Ferguson*, 232 AD2d 176, 177 [1996]). Moreover, the manufacturers in *Forni* "certainly had no control over the criminal conduct of a third party" (*id.*). Indeed, albeit in the context of a negligent marketing case, the Court of Appeals, in *Hamilton* (96 NY2d at 232-233), specifically rejected any notion that defendant gun manufacturers and dealers owe a duty to control the conduct of others.

The Court of Appeals further expressed its skepticism about specific marketing adjustments that the Eastern District suggested in *Hamilton v Accu-Tek* (62 F Supp 2d 802, 820 [1999]) would abate the problem of handgun violence (*Hamilton,* 96 NY2d at 235-236):

> "Plaintiffs also assert that a general duty of care arises out of the gun manufacturers' ability to reduce the risk of illegal gun trafficking through control of the marketing and distribution of their products. The District Court accepted this proposition and posited a series of structural changes in defendants' marketing and distribution regimes that might 'reduce the risk of criminal misuse by ensuring that the first sale was by a responsible merchant to a responsible buyer' (*Hamilton v Accu-Tek*, * * * 62 F Supp 2d, at 820). Those changes, and others proposed by plaintiffs that a jury might reasonably find subsumed in a gun manufacturer's duty of care, would have the unavoidable effect of eliminating a significant number of lawful sales to 'responsible' buyers by 'responsible' Federal firearms licensees (FFLs) who would be cut out of the distribution chain under the suggested 'reforms.' "

Thus, the Court of Appeals seems reluctant to extend duties currently recognized between certain parties "beyond that limited class of plaintiffs to members of the community at large" (*id.* at 233). However, even if such a legal duty were held to exist so as to hold these defendants accountable in the context of a common-law public nuisance claim, and, further, assuming plaintiff has sufficiently pleaded that element—i.e., that by their manufacturing and marketing decisions and practices defendants created and maintain a common-law public nuisance in violation of a duty to the public at large—plaintiff still falls short.

We so hold because (1) the harm plaintiff alleges is far too remote from defendants' otherwise lawful commercial activity to fairly hold defendants accountable for common-law public nuisance; and (2) defendants' lawful commercial activity, having been followed by harm to person and property caused directly and principally by the criminal activity of intervening third parties, may not be considered a proximate cause of such harm.[3]

On remoteness and proximate cause, the motion court correctly found to be fatally flawed plaintiff's contention that, in order to advance a cognizable common-law public nuisance claim, it need only allege and prove that defendants' business practices created or contributed to the maintenance of a "public nuisance." While plaintiff aptly recognizes that it must prove

---

**3.** The Courts of Appeals in at least eight circuits have dismissed lawsuits by union health benefit funds against tobacco companies to recover the costs of smoking-related illnesses on the ground that the harm to the fund participants is too remote from the companies' wrongdoing to permit recovery under federal statutory and state common-law claims. Illustrative of the rationale behind these dismissals is the "tortured path" that must be followed from the tobacco companies' wrongdoing to the union health benefit funds' increased expenditures, which further demonstrates that plaintiff's claims are exactly the type of indirect claims that proximate cause requirements are intended to weed out (*Steamfitters Local Union No. 420 Welfare Fund v Philip Morris, Inc.*, 171 F3d 912 [3d Cir 1999], *cert denied* 528 US 1105 [2000]; *see also Service Empls. Intl. Union Health & Welfare Fund v Philip Morris Inc.*, 249 F3d 1068 [DC Cir 2001], *cert denied sub nom. Republic of Guatemala v Tobacco Inst., Inc.*, 534 US 994 [2001]; *Lyons v Philip Morris Inc.*, 225 F3d 909 [8th Cir 2000]; *United Food & Commercial Workers Unions, Empls. Health & Welfare Fund v Philip Morris, Inc.*, 223 F3d 1271 [11th Cir 2000]; *Texas Carpenters Health Benefit Fund v Philip Morris Inc.*, 199 F3d 788 [5th Cir 2000]; *International Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v Philip Morris Inc.*, 196 F3d 818 [7th Cir 1999]; *Laborers Local 17 Health & Benefit Fund v Philip Morris, Inc.*, 191 F3d 229 [2d Cir 1999], *cert denied* 528 US 1080 [2000]; *Oregon Laborers-Employers Health & Welfare Trust Fund v Philip Morris Inc.*, 185 F3d 957 [9th Cir 1999], *cert denied* 528 US 1075 [2000]).

defendants caused or contributed to the nuisance, we cannot also conclude that, no matter how far removed from defendants' lawful business practices the harm is felt, defendants nevertheless remain liable under a common-law public nuisance theory. We believe the motion court astutely observed, "a line must eventually be drawn since there will be many instances in which a party may have contributed in some remote way and yet it is inappropriate to subject that party to tort liability. In other words, at some point, a party is simply too far removed from the nuisance to be held responsible for it." That rationale was apparently an integral part of the *Hamilton* Court's finding that defendants were not liable (96 NY2d at 234 [connection between defendants, criminal wrongdoers and plaintiffs is remote, running through several links in a chain consisting of at least the manufacturer, the federally licensed distributor or wholesaler, and the first retailer, and most often including numerous subsequent legal purchasers or even a thief]). Indeed, "proximate cause is used essentially as a legal tool for limiting a wrongdoer's liability only to those harms that have a reasonable connection to his actions" (*Laborers Local 17 Health & Benefit Fund v Philip Morris, Inc.*, 191 F3d 229, 235 [1999]).

Thus, in *Petitions of Kinsman Tr. Co.* (388 F2d 821, 825 [1968]), the Second Circuit, applying New York law, found the connection between the negligence and damage was too tenuous and remote. In *Kinsman*, petitioner's employees negligently moored a ship in the Buffalo River. The ship broke loose and struck another ship, and both careened down the river crashing into a bridge. The resulting wreckage formed a dam that caused extensive flooding and an ice jam, disrupting transportation for two months. Claimants, owners of grain stored on their ships located on the river, were unable to unload the grain and they sued petitioners for the resulting damage (*see also Ascher v F. Garafolo Elec. Co.*, 113 AD2d 728, 729-731 [1985], *affd* 67 NY2d 637 [1986] [insufficient lighting of subway platform, carrying dangerous trap and nuisance for subway riders, not proximate cause of injury as a matter of law]).

*Liability Imposed and Enforced by the Judiciary for Lawful, Heavily Regulated, Commercial Activity Involving a Nondefective Product.*

One of our concerns in this public nuisance case of first impression is not—as was the potential faced by the *Hamilton* Court (96 NY2d at 233)—a limitless number of private plaintiffs who would likely appear at the courthouse steps were we to allow this claim to proceed. Rather, we see on the hori-

zon, were we to expand the reach of the common-law public nuisance tort in the way plaintiff urges, the outpouring of an unlimited number of theories of public nuisance claims for courts to resolve and perhaps impose and enforce—some of which will inevitably be exotic and fanciful, wholly theoretical, baseless, or perhaps even politically motivated and exploitative. Such lawsuits could be leveled not merely against these defendants, but, well beyond them, against countless other types of commercial enterprises, in order to address a myriad of societal problems—real, perceived or imagined—regardless of the distance between the "causes" of the "problems" and their alleged consequences, and without any deference to proximate cause. Such an explosion of litigation would inappropriately engulf the courts beyond their means in issues which the legislative and executive branches are vastly better designed, equipped and funded to address. Certainly, in this situation, as the *Hamilton* Court (96 NY2d at 239 n 9) and the motion court both pointed out in detail, the problems to which plaintiff's complaint alludes are presently the subject of strict control and regulation by the executive and legislative branches of both the United States and New York State governments. Indeed, they have been for many decades.[4]

Although there are cases like *New York Trap Rock* (*supra*) and others involving valid claims of common-law public nuisance, where judges can and do take appropriate corrective action, courts are not always the best forum to resolve problems associated with, or which follow, every form of commercial activity. As for those societal problems associated with, or following, legal handgun manufacturing and marketing, their resolution is best left to the legislative and executive branches (*see discussion* Bryce A. Jensen, Note, *From Tobacco to Health Care and Beyond—A Critique of Lawsuits Targeting Unpopular Industries*, 86 Cornell L Rev 1334, 1371-1385 [2001]). Their significantly greater resources render those two branches appropriately empowered and, virtually always, vastly better suited to address, investigate, evaluate, and resolve perceived societal problems—problems which may be as remote from a defendant's conduct and control as these. As a practical matter, because of the ethical and legal limits on its ability to

___

4. This controlling regulation, like the very issue of legality, is for the Legislature (*cf. Forni v Ferguson*, 232 AD2d 176, 176 [1996] ["While there have been and will be countless debates over the issue of whether the risks of firearms outweigh their benefits, it is for the Legislature to decide whether manufacture, sale and possession of firearms is legal"]).

investigate, gather information, and act, and, further, in light of its often scant or even nonexistent resources, a court is uniquely ill-equipped to do so. Moreover, courts have not, by virtue of statute or case law, been given authority to act effectively in this specific setting.

The prospect of judges becoming embroiled in a "hands-on" fashion in the minutiae of disputes over how numerous companies manufacture and market their products poses insurmountable obstacles as we foresee courts attempting to carefully monitor which models of guns should or should not be designed, which ones may be sold in exactly what quantities, to and by which wholesalers, in which states, and to which individual retailers in which communities. Beyond that, courts could be asked to carve out geographic criteria for marketing certain types of handguns and prohibiting, counting, and limiting others, and then being asked to implement, monitor and enforce such criteria for every manufacturer, wholesaler, distributor and retailer summoned to court by the State. Whatever intentions or beliefs underlie this lawsuit's protective goals, the courts are not designed or equipped for such all-embracing new undertakings. Notably, nowhere in its complaint does plaintiff particularize any practical methods by which defendants should or could effectuate an abatement of the alleged nuisance, or, even more important, any specific, realistic, and practical way judges could monitor and enforce any such court-ordered abatement.

In light of the foregoing, we believe it is legally inappropriate, impractical and unrealistic to mandate that defendants undertake, and the courts enforce, unspecified measures urged by plaintiff in order to abate the conceded availability and criminal use of illegal handguns.

Therefore, the order of the Supreme Court, New York County (Louis York, J.), entered August 24, 2001, which consolidated and granted defendants' separate motions to dismiss the complaint for failure to state a cause of action, should be affirmed, without costs.

ROSENBERGER, J. (dissenting). I respectfully dissent.

The majority concludes that defendants' pre-answer motion to dismiss, brought pursuant to CPLR 3211 (a) (7), should be granted and the complaint dismissed, based upon unfounded fears that a tidal wave of frivolous public nuisance litigation will ensue. In reaching this conclusion, the majority abandons firmly established procedural rules governing such motions, to reach a result that is neither well founded nor necessary.

The Attorney General of the State of New York, acting in parens patriae for the people of the State, brings this action, not for money damages but for abatement of a public nuisance, against defendants, manufacturers and wholesalers of handguns that have been identified by law enforcement authorities as having been involved in the commission of various crimes. The Attorney General alleges that the proliferation of handguns which are used in the commission of crimes in New York State constitutes a "public nuisance" as declared by Penal Law § 400.05 (1)[1] and under the common law, not only because of the significant number of deaths and injuries they cause each year, but also because they interfere with the general public's safety and its right and ability to use and enjoy public areas. The complaint details, among other things, the gruesome number of homicides and other illegal gun-related deaths and injuries that occur in New York each year.

The complaint alleges that defendant manufacturers are made aware through, among other means, trace requests made in the course of criminal investigations by the United States Bureau of Alcohol, Tobacco and Firearms (BATF), that certain types of the guns they design and manufacture are disproportionately involved in crimes and that a disproportionate number of crime-related guns have been supplied by defendant manufacturers through particular wholesalers with whom the manufacturers do business. The complaint also alleges that defendant wholesalers similarly are put on notice through BATF trace requests that certain types of the guns they sell to retailers are disproportionately involved in crimes and that certain retailers whom they supply with firearms sell a disproportionate number of crime-related guns.

The heart of the complaint is set forth in the allegations that defendants, having been made aware, through BATF information requests and other means, of the types of firearms that are most often associated with crime and of the wholesale and retail outlets that are disproportionately involved in the distribution and sale of such "crime guns," continue to design, produce, market, sell and distribute these guns in such ways as to contribute to the public nuisance of illegal guns used in the commission of crimes. In particular, the complaint alleges, inter alia, that defendant manufacturers increase the number

---

1. The statute provides, in relevant part, that "Any weapon, instrument, appliance or substance specified in article two hundred sixty-five, when unlawfully possessed, manufactured, transported or disposed of, or * * * utilized in the commission of an offense, is hereby declared a nuisance."

of guns they produce to meet the demand and take advantage of the market for illegal guns; that they choose features, including styling, concealability, and low cost, which are attractive to the illegal gun market, often at the expense of safety features; and that they continue to supply guns to certain wholesalers, knowing that a disproportionate number of crime-related guns are distributed by those wholesalers. With respect to defendant wholesalers, the complaint alleges that, armed with the same knowledge of the types of guns that are disproportionately involved in crimes and which retailers are disproportionately associated with the sale of such guns, they continue to purchase such guns from the manufacturers and to sell them to those retailers. The complaint concludes that "defendants know that a significant portion of their guns become crime guns, but turn a blind eye so as to increase profits, at the cost of many human lives and much human suffering."

Various defense motions to dismiss the complaint for failure to state a cause of action under CPLR 3211 (a) (7) were consolidated for decision and granted.

As an initial matter, it is important to note that the scope of a court's inquiry on a motion to dismiss under CPLR 3211 (a) (7) is very narrowly circumscribed. The court must "accept the facts alleged as true * * * and determine simply whether the facts alleged fit within any cognizable legal theory" (*Morone v Morone,* 50 NY2d 481, 484 [1980] [citations omitted]; *see also Guggenheimer v Ginzburg,* 43 NY2d 268, 275 [1977]). The complaint must be construed "liberally" (CPLR 3026), and the court must accept as true not only "the complaint's material allegations" but also "whatever can be reasonably inferred therefrom" in favor of the pleader (*McGill v Parker,* 179 AD2d 98, 105 [1992]; *see also Cron v Hargro Fabrics,* 91 NY2d 362, 366 [1998]; *see also New York Trap Rock Corp. v Town of Clarkstown,* 299 NY 77, 80 [1949]). In ruling on a motion to dismiss, the court is not authorized to assess the merits of the complaint or any of its factual allegations, but only to determine if, assuming the truth of the facts alleged, the complaint states the elements of a legally cognizable cause of action.

The complaint in this case sets forth claims for abatement of a "public nuisance," which the Court of Appeals has defined as "conduct that amounts to a substantial interference with the exercise of a common right of the public, thereby offending public morals, interfering with the use by the public of a public place or endangering or injuring the property, health, safety or comfort of a considerable number of persons" (*532 Madison*

*Ave. Gourmet Foods v Finlandia Ctr.*, 96 NY2d 280, 292 [2001]; *New York Trap Rock Corp. v Town of Clarkstown*, 299 NY 77, 80-81 [1949]; *Sullivan v McManus*, 19 App Div 167, 168 [1897]; *see also Cincinnati v Beretta U.S.A. Corp.*, 95 Ohio St 3d 416, 768 NE2d 1136 [2002]; *City of Chicago v Beretta U.S.A. Corp.*, 337 Ill App 3d 1, 785 NE2d 16 [2002]; Restatement [Second] of Torts § 821B [1] ["A public nuisance is an unreasonable interference with a right common to the general public."]). Where the real party in interest is the "People," that is, the populace of a sovereign state, the appropriate agency or official may properly institute an action for abatement "as *parens patriae* of those individuals who have been or will be injured by the alleged public nuisance" (*State of New York v Bridgehampton Road Races Corp.*, 44 AD2d 725, 726 [1974]; *see also New York Trap Rock Corp. v Town of Clarkstown*, 299 NY 77, 82-84 [1949]; *see generally* Prosser and Keeton, Torts § 90, at 643 [5th ed]; Developments, *The Paths of Civil Litigation: The Use of the Public Nuisance Tort Against the Handgun Industry*, 113 Harv L Rev 1759 [2000]).

The cause of action for public nuisance developed from the principle that an "infringement of the rights of the crown, or of the general public, was a crime" (Prosser and Keeton, Torts § 86, at 617 [5th ed]). As the Court of Appeals has noted, "[a] public, or as sometimes termed a common, nuisance is an offense against the State and is subject to abatement or prosecution on application of the proper governmental agency" (*Copart Indus. v Consolidated Edison Co.*, 41 NY2d 564, 568 [1977]).

To state a cause of action for abatement of a public nuisance in New York, the plaintiff must allege conduct by the defendant that creates, maintains, or contributes to an interference with or injury to the public in the exercise of rights common to all (*New York Trap Rock Corp. v Town of Clarkstown*, 299 NY 77, 80 [1949]; *accord Cincinnati v Beretta U.S.A. Corp.*, 95 Ohio St 3d 416, 419-420, 768 NE2d 1136, 1142-1143 [2002], *and City of Chicago v Beretta U.S.A. Corp.*, 337 Ill App 3d 1, 9, 785 NE2d 16, 24 [2002] ["A sufficient pleading for a public nuisance cause of action consists of facts alleging a right common to the general public, a transgression of those rights by the defendant and resulting damages" (the "damages" referred to by the court are not money damages, but the injury to the public caused by a public nuisance, which the discussion [337 Ill App 3d at 17-18, 785 NE2d at 31] makes clear )]; *see also* Developments, *The Paths of Civil Litigation: The Use of the Public Nuisance Tort Against the Handgun Industry*, 113 Harv

L Rev 1759 [2000]). In addition, while often not explicitly stated in the decisional law, it is implied that a plaintiff must allege and prove defendant knew or should have known that its conduct caused or contributed to the nuisance (*see e.g. State of New York v Shore Realty Corp.*, 759 F2d 1032, 1051 [2d Cir 1985]; *Pharm v Lituchy*, 283 NY 130, 132 [1940]; *Conhocton Stone Rd. v Buffalo, N.Y. & Erie R.R. Co.*, 51 NY 573 [1873]; *New York Tel. Co. v Mobil Oil Corp.*, 99 AD2d 185, 188-189 [1984]).

In ruling on the motions to dismiss in this case, Supreme Court cited Penal Law § 400.05 and held that "[t]here can be no dispute that the unlawful use of handguns constitutes a public nuisance." Defendants did not contest that premise in Supreme Court nor do they contest it here. Thus, the complaint adequately alleges the existence of a public nuisance, the first element in a public nuisance abatement cause of action by the State.

The complaint further alleges that defendants are made aware, through BATF trace requests, of the kinds and numbers of guns that are used in the commission of crimes and that, having been made aware, defendants contribute to the public nuisance of illegal "crime guns" by catering to the market for such guns through their design, manufacturing and distribution practices. These allegations, which, as noted, must be taken as true for purposes of the motion to dismiss, satisfy the knowledge and contribution elements of the public nuisance cause of action. Since the allegations of the complaint satisfy the elements of a cause of action for abatement of a public nuisance, the motion to dismiss should have been denied under well-settled rules applicable to CPLR 3211 motions.

In reaching a contrary conclusion, the majority and the motion court fail to distinguish between a cause of action for abatement of a public nuisance by the State acting in parens patriae and other types of "nuisance" actions, inappropriately assess the merits of the allegations, and, erroneously relying on *Hamilton v Beretta U.S.A. Corp.* (96 NY2d 222 [2001]), apply an inapposite negligence analysis to this case.

A public nuisance abatement cause of action by the State is different, both in character and in the nature of the remedy sought, from a private nuisance claim, which involves a "civil wrong, based on a disturbance of [an individual's] rights in land" (Prosser and Keeton, Torts § 86, at 618 [5th ed]; *see also Cincinnati v Beretta U.S.A. Corp.*, 95 Ohio St 3d 416, 768 NE2d 1136 [2002]), and which can be remedied by a private right of

action for damages by those individuals whose ownership and/or occupancy rights to use and enjoy the land have been infringed (Prosser and Keeton, Torts § 86, at 618; *see also State of New York v Shore Realty Corp.*, 759 F2d 1032, 1050 [2d Cir 1985] [collecting New York cases]). Public nuisance abatement claims by state officials, like those set forth in the instant complaint, must also be differentiated from public nuisance actions for damages brought by private plaintiffs, who, to prevail, must allege and prove that, as a direct result of the nuisance, they suffered particular injury separate and apart from the harm suffered by the public at large as a direct result of the public nuisance (*see e.g. 532 Madison Ave. Gourmet Foods v Finlandia Ctr.*, 96 NY2d 280, 292 [2001]; *see also*, Prosser and Keeton, Torts § 90, at 643).

In contrast to private nuisance actions and public nuisance actions by private plaintiffs, both of which are brought primarily for monetary damages, public nuisance abatement actions are encompassed within a state's traditional police powers, exercised to protect the health and well-being of the public by requiring the offending defendants to abate the actions that create or contribute to the public nuisance[2] (*see e.g. Garcia v Gray*, 507 F2d 539, 544. [10th Cir 1974], *cert denied* 421 US 971 [1975]; *see generally*, Lawrence O. Gostin et al., *The Law and the Public's Health: A Study of Infectious Disease Law in the United States*, 99 Colum L Rev 59; John G. Culhane and Jean Macchiaroli Eggen, *Defining a Proper Role for Public Nuisance Law in Municipal Suits Against Gun Sellers: Beyond Rhetoric and Expedience*, 52 SC L Rev 287, 293-295). While private nuisance claims and public nuisance claims for damages incorporate traditional negligence notions of foreseeability, proximate cause and fault, state-initiated public nuisance abatement claims are founded on the theory that the State can obtain abatement of a condition that is injurious to the public. As such they are not negligence actions, nor are

---

**2.** *City of Philadelphia v Beretta U.S.A. Corp.* (277 F3d 415 [3d Cir 2002]), *Camden County Bd. of Chosen Freeholders v Beretta, U.S.A. Corp.* (273 F3d 536 [3d Cir 2001]), *District of Columbia v Beretta U.S.A. Corp.* (2002 WL 31811717 [DC Super, Dec. 16, 2002]), *City of Gary ex rel. King v Smith & Wesson Corp.* (2001 WL 333111 [Ind Super Ct, Jan. 11, 2001]), *Ileto v Glock, Inc.* (194 F Supp 2d 1040 [CD Cal 2002]), *Penelas v Arms Tech., Inc.* (778 So 2d 1042 [Fla Ct App, 3d Dist 2001]), and *Ganim v Smith & Wesson Corp.* (258 Conn 313, 780 A2d 98 [2001]), cited by the majority, are inapposite to this case as they were all actions brought by individuals or municipal entities or authorities acting as injured plaintiffs for damages, not, as here by the State, acting in parens patriae pursuant to its police powers for abatement of a public nuisance.

they governed by negligence concepts (*see New York v Shore Realty Corp., supra*, 759 F2d at 1050-1051; *McFarlane v City of Niagara Falls*, 247 NY 340, 345 [1928] [plaintiff "may not avert the consequences of his own contributory negligence by affixing to the negligence of the wrongdoer the label of a nuisance"]; *see generally* Louise A. Halper, *Public Nuisance and Public Plaintiffs: Rediscovering the Common Law [Part I]*, 16 Envtl L Rep 10292 [1986]).[3]

A negligence analysis, with its requirement of the existence of a duty, limited by concomitant considerations of proximate cause, foreseeability, fault, and intent, and tempered by notions of the equitable apportionment of economic liability, is inapposite to an action for abatement of a public nuisance brought by the State in the proper exercise of its police powers. A negligence action for damages begins with an inquiry into whether the defendant owed a duty to the plaintiff, whether the defendant's conduct was the proximate cause of the plaintiff's injury, and whether injury to the plaintiff was a foreseeable consequence of the defendant's actions, then progresses to a determination of whether the defendant's conduct was "tortious"—i.e. negligently or intentionally wrongful—and concludes with an assessment of the amount of money "damages" that is appropriate to compensate the plaintiff for his injuries foreseeably caused by defendant's tortious conduct. In contrast, a public nuisance abatement action brought by the State as parens patriae begins with a determination that public nuisance—or harm to the public—exists, works backwards

---

**3.** Defendants' reliance on Restatement (Second) of Torts § 822, Comment *a*, which analogizes the rules applicable to private nuisance to actions for public nuisance, is similarly misplaced. The Comment is applicable to damages actions for public nuisance brought by private plaintiffs, not, as here, actions brought by the State to abate a public nuisance (*see* Robert Abrams and Val Washington, *The Misunderstood Law of Public Nuisance: A Comparison With Private Nuisance Twenty Years After Boomer*, 54 Alb L Rev 359, 367-368 [1990] [noting that, "(u)nfortunately, the comment fails to distinguish or clearly address the public nuisance action as an exercise of the state's police power, thus implying that public nuisance is always treated as the tort of the same name"]). As one court explained, "nuisance" is generally defined in terms of the offense resulting from the activity rather than the activity itself, and thus, "[u]nlike most other torts, [nuisance] is not centrally concerned with the nature of the conduct causing the damage, but with the nature and relative importance of the interests interfered with or invaded" (*Branch v Western Petroleum, Inc.*, 657 P2d 267, 274 [Utah 1982]; *see also City of Rochester v Premises Located at 10-12 S. Washington St.*, 180 Misc 2d 17, 22 [1998]; *State of New York v Fermenta ASC Corp.*, 160 Misc 2d 187, 195 [1994], *appeal dismissed* 238 AD2d 400 [1997], *lv denied* 90 NY2d 810 [1997]).

to identify the individuals or entities who are causing or contributing to the harm, and concludes with a determination of what actions, if any, those individuals or entities should be required to take to abate the nuisance. Questions of pinpointed duty, foreseeability, remoteness, intent, or the "wrongfulness" of defendant's conduct are not at issue in public nuisance *abatement* actions brought by the State. Every individual and entity is responsible to the State and the general population not to cause or contribute to a public nuisance and may be required to take ameliorative actions to diminish his, her, or its contribution to the nuisance, regardless of whether the creation of the nuisance was foreseeable or whether defendant's conduct in creating or contributing to the nuisance was wrongful (*see e.g. New York v Shore Realty Corp.*, 759 F2d at 1050-1051; *United States v Hooker Chems. & Plastics Corp.*, 722 F Supp 960, 968 [WD NY 1989]; *City of Rochester v Premises Located at 10-12 S. Washington St.*, 180 Misc 2d 17 [Sup Ct, Monroe County 1998]; *see also City of Chicago v Beretta U.S.A. Corp.*, 337 Ill App 3d 1, 13, 785 NE2d 16, 27-28 [2002] [citing Restatement (Second) of Torts § 821B]).

For this reason, the reliance by the majority and by the motion court on *Hamilton v Beretta U.S.A. Corp.* (96 NY2d 222 [2001]) is misplaced. *Hamilton* was a negligence action for damages brought against gun manufacturers by relatives of persons killed by handguns. The Court of Appeals responded to the Second Circuit's posttrial certified question, "Whether the defendants owed plaintiffs a duty to exercise reasonable care in the marketing and distribution of the handguns they manufacture?" (*Id.* at 230-231.) The Court employed a traditional negligence analysis of a full trial record and held that those defendants did not owe those plaintiffs the specified duty of care because the connection between the defendants' conduct and the plaintiffs' injuries was too attenuated and because the potential damages liability to the defendants was limitless (*id.* at 233-234).[4]

---

**4.** It is worth noting that the Court of Appeals did not lock the door against damages actions against gun manufacturers and distributors. In addressing a proposed alternative claim of negligent entrustment as a basis for imposing a duty, the Court in *Hamilton* stated:

"The negligent entrustment doctrine might well support the extension of a duty to manufacturers to avoid selling to certain distributors in circumstances where the manufacturer knows or has reason to know those distributors are engaging in substantial sales of guns into the guntrafficking market on a consistent

*Hamilton* did not involve or address the elements of a public nuisance abatement action and is, therefore, inapposite to the present case. The majority imports *Hamilton*'s discussion of remoteness concepts—clearly at home in a negligence action— into this public nuisance abatement action, arguing that "the harm plaintiff alleges is far too remote from defendants' otherwise lawful commercial activity to fairly hold defendants accountable for common-law public nuisance" and that defendants do not exercise control over the criminals who use defendants' lawful products in the commission of their unlawful acts. However, the essence of the Attorney General's complaint is not that defendants cause criminals to use their weapons illegally, but that defendants' design, manufacture, marketing, distribution and sales practices cater to the market for crime guns and thereby contribute to the public nuisance. The Attorney General, to prevail, must prove that defendants' practices cause or contribute to the public nuisance, and a particular defendant's obligation to abate the nuisance will be in direct proportion to the degree to which it may have caused or contributed to the nuisance. Thus, while "remoteness" concepts may be relevant to the determination of what, if any, abatement actions a defendant might be fairly required to take, they are not determinative of whether a cause of action for public nuisance has been stated (see *Cincinnati v Beretta U.S.A. Corp.*, 95 Ohio St 3d at 419-420, 768 NE2d at 1142-1143; *City of Chicago v Beretta U.S.A. Corp.*, 337 Ill App 3d at 17, 785 NE2d at 30; *City of Boston v Smith & Wesson Corp.*, 12 Mass L Rptr 225, 2000 WL 1473568, 2000 Mass Super LEXIS 352 [Super Ct, July 13, 2000]).

The concern expressed in *Hamilton*, and echoed by the majority here, about the potential for "limitless" damages, is also not applicable to this case. The only relief sought in this case is the abatement of the nuisance; money damages are not demanded.

The majority's related concern that allowing this case to go forward will "likely open the courthouse doors to a flood of limitless, similar theories of public nuisance * * * against a wide and varied array of other commercial and manufacturing enterprises and activities," is equally without basis. This is a case brought by the Attorney General, in parens patriae, based upon defendants' alleged contribution to an acknowledged public nuisance. Denying the motion to dismiss in this case cannot

basis. Here, however, plaintiffs did not present such evidence." (96 NY2d at 237.)

serve to open the courthouse doors to a flood of frivolous public nuisance abatement actions unless there is a realistic fear that out-of-control public officials are lined up, awaiting the chance to bring such actions.

Similarly inapposite are defendants' negligence-based arguments that there can be no cause of action for public nuisance without an allegation of some wrongful conduct on their part, and that there can be no such allegation since they are engaged in the lawful exercise of a lawful activity—the manufacture and sale of weapons. However, the complaint in this action does not allege that the lawful sale of guns constitutes the public nuisance, but rather, that particular design, manufacturing, marketing and distribution practices of the defendants, which are not regulated by statute, create and/or contribute to the public nuisance of illegal guns (*see Cincinnati v Beretta U.S.A. Corp.*, 95 Ohio St 3d at 420, 768 NE2d at 1143; *City of Chicago v Beretta U.S.A. Corp.*, 337 Ill App 3d 1, 13-14, 785 NE2d 16, 27-28 [2002]).

Furthermore, as the majority here concedes, otherwise lawful businesses, some of which are permitted by the State and regulated by statute, can be and have been held to have contributed to public nuisances because of the manner or circumstances in which they operate (*see e.g. New York Trap Rock Corp. v Town of Clarkstown*, 299 NY 77 [1949]; *Clawson v Central Hudson Gas & Elec. Corp.*, 298 NY 291, 298-299 [1948]; *Hoover v Durkee*, 212 AD2d 839 [1995]; *City of Rochester v Premises Located at 10-12 S. Washington St.*,180 Misc 2d 17, 21 [1998]; *State of New York v Waterloo Stock Car Raceway*, 96 Misc 2d 350 [Sup Ct, Seneca County 1978]; *see also State of New York v Shore Realty Corp.*, 759 F2d 1032, 1051 [2d Cir 1985]; *accord City of Chicago v Beretta U.S.A. Corp.*, 337 Ill App 3d at 13-14, 785 NE2d at 27-28).

The majority attempts to distinguish *New York Trap Rock Corp. v Town of Clarkstown* (299 NY 77 [1949]) on the grounds that, in this case, there are intervening actors beyond defendants' control—i.e., criminals—who cause the damage to the public, while in *Trap Rock*, it was Trap Rock's blasting activities that directly caused the public injury and that the damage was "spatially and temporally proximate" to Trap Rock's activities. First, it must be repeated that the Attorney General is not alleging that defendants are or should be held responsible for the injuries caused by actors, i.e., criminals, beyond their control, but that defendants' particular design, manufacturing, marketing and distribution practices—all of which are clearly

within defendants' control—contribute to the public nuisance of the proliferation of crime guns on the streets of New York. Second, the suggestion that a public nuisance abatement action will lie only when defendant's conduct occurs close in time and geography to the injury is unsupportable. Such requirement would serve only to insulate decisions made elsewhere from the reach of state public nuisance abatement actions, regardless of the severity of the nuisance or the direct link between such decisions and the public harm. Nothing in *Trap Rock* or any other case suggests such a restriction on public nuisance abatement actions.

Similarly, the majority identifies no general principles which serve to distinguish *City of Rochester v Premises Located at 10-12 S. Washington St.* (180 Misc 2d 17 [1998]) from this case. Instead, the majority evinces its distaste for raucous nightclubs to explain why the defendant in that case—the nightclub owner—was appropriately subject to a public nuisance cause of action for conduct by former club customers occurring outside the club's premises. One may probably safely assume that a distaste for the proliferation of illegal crime guns in New York, to which the Attorney General alleges the defendants contribute, is at least equal to the aversion to drunken nightclub customers causing public disturbances. In both cases, the complaint addresses the defendants' contribution to the public nuisance in question and seeks to abate the nuisance.

The absence of any allegation in the complaint that the guns the defendants manufacture and sell are defective is also irrelevant, as the principles governing products liability actions are inapplicable to public nuisance abatement actions. While New York products liability law permits recovery from a manufacturer of a defective product for injuries caused by the defect (*see e.g. Gebo v Black Clawson Co.*, 92 NY2d 387 [1998]), it does not follow that a manufacturer or distributor of nondefective products is automatically insulated from public nuisance abatement actions. Again, the crux of the complaint is that defendants have contributed to the public nuisance of illegal guns on the street through the manner in which they design, manufacture, market and distribute their products. It is not that the guns are defective and the defect caused a particular injury that deserves recompense.[5]

---

5. Contrary to defendants' assertions, the claims in *State of New York v Fermenta ASC Corp.* (160 Misc 2d 187 [Sup Ct, Suffolk County 1994], *appeal dismissed* 238 AD2d 400 [1997]) and *Suffolk County Water Auth. v Union*

Nor, contrary to defendants' contention, is the "direct injury" requirement that governs Federal RICO actions (*see e.g. Holmes v Securities Inv. Protection Corp.*, 503 US 258 [1992]; *Laborers Local 17 Health & Benefit Fund v Philip Morris, Inc.*, 191 F3d 229 [2d Cir 1999], *cert denied* 528 US 1080 [2000]) applicable to the State's action for abatement of a public nuisance (*see e.g. State of New York v Bridgehampton Road Races Corp.*, 44 AD2d 725, 726 [1974]; *cf. Ganim v Smith & Wesson Corp.*, 258 Conn 313, 780 A2d 98 [Sup Ct 2001] [dismissing for lack of standing a public nuisance case brought by a city and its mayor for particular expenses and losses incurred by plaintiffs]).

In addition to determining that the allegations of the complaint did not meet the prerequisites for a negligence cause of action, the motion court *granted* defendants' motions to dismiss based upon a determination that the complaint failed to adequately allege that the BATF trace requests provide defendants with the "type of information that would enable them to facilitate and profit from the unlawful sale or use of handguns." The court reasoned that the complaint "does not specifically state that the manufacturer or wholesaler is told that the information sought relates to a gun that was used in a crime," and noted a statement in a BATF report that "crime gun traces do not necessarily indicate illegal activity by licensed dealers or their employees."

We may put aside the issue of whether, in an action by a state official for abatement of a public nuisance, it is sufficient to allege and prove that a nuisance exists and that defendant caused or contributed to it in order to obtain an order of abatement or whether, in addition, there must be an allegation that the defendant knew that its conduct caused or contributed to the nuisance—an issue we need not reach since the Attorney General has alleged that defendants were on notice that the guns they manufactured and sold caused or contributed to the public nuisance. Assuming that notice is a necessary element of a public nuisance abatement action, the motion court's conclusion that the notice allegations were deficient was erroneous for several reasons.

As an initial matter, the complaint clearly does not need to allege that defendants were provided with information that enabled them to make a profit from the illegal gun nuisance. Whether defendants profited from the conduct alleged is simply

---

*Carbide Corp.* (NYLJ, May 2, 1991, at 28, col 1) were not based on defects in the defendants' products. The issue in both cases was whether a nuisance existed, not whether the products were defective.

not relevant to whether that conduct causes or contributes to the public nuisance of illegal guns. At most, the complaint must allege that defendants had notice that their gun design, manufacturing, marketing and distribution practices were contributing to the nuisance. The complaint fulfills that requirement.

Second, the complaint, quoting the applicable federal statute, alleges that defendants are required by federal law to keep records—by serial number—about each handgun they produce and sell and to respond immediately to BATF gun-information requests that are generated *"in the course of * * * bona fide criminal investigation*[s]" (*see* 18 USC § 923 [g] [7] [emphasis supplied]). Thus, according to the complaint, defendants are put on notice by the very fact and nature of the BATF request, that information is being sought about the disposition of a gun that was involved in the commission of a suspected crime.

Third, the complaint's allegation that "[a]ll of the defendants were put on notice that they were manufacturing or distributing a significant number of guns that were illegally possessed, transported or disposed of" by, among other things, BATF trace requests, must be assumed to be true, and is, therefore, sufficient in and of itself to satisfy the notice element of the public nuisance cause of action and preserve the complaint against a motion to dismiss.

Fourth, the motion court erred by assessing the merits of the notice allegations against a statement in the BATF report introduced by defendants as support for their motion to dismiss. Not only was the court required to accept the allegations of the complaint as true for purposes of deciding the dismissal motion, but the statement in the report about possible illegal activity by licensed dealers and their employees has no relevance to the allegations in the complaint.

The majority in this Court goes further by not accepting the notice allegations of the complaint as true and, instead, adopting, for purposes of this case and these motions, findings made upon a full trial record by the Court of Appeals in *Hamilton*, a wholly separate case brought by very different plaintiffs. Based upon evidence adduced in *Hamilton*, the majority concludes that the BATF trace requests are inadequate, as a matter of fact and law, to have put defendants on notice of their alleged contribution to the public nuisance of crime guns in New York. As an initial matter, the discussion of BATF trace requests in *Hamilton v Beretta U.S.A. Corp.* (96 NY2d 222 [2001]) appears

to address the specifics of trace requests, i.e., the identity of the perpetrator of the gun-related crime under investigation and the victim, and does not address whether defendants are put on notice that certain of the guns they design, manufacture, market and distribute disproportionately end up as crime guns. Even more to the point, the majority's adoption of factual findings in *Hamilton* for purposes of assessing defendants' motion to dismiss in this case constitutes a novel and startling departure from established practice regarding CPLR 3211 (a) (7) motions.

The majority's final objection to the continuation of the present lawsuit is that courts might become "embroiled" in the specifics of abatement orders—a task the majority clearly wishes to avoid. Such concern, addressed to the fashioning of equitable remedies, something which courts do every day, is misplaced at this stage of the litigation, where our only task is to determine whether the allegations of the complaint, which must be assumed to be true, state a cause of action for abatement of a public nuisance.

Because I believe that the complaint sufficiently alleges facts which, if proven, would establish a cause of action for abatement of a public nuisance, I would reverse and remand the case for further proceedings.

BUCKLEY, P.J., and LERNER, J., concur with MARLOW, J.; ROSENBERGER, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered August 24, 2001, affirmed, without costs.